UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:12-CV-333 |
| | § | |
| CATARINO GAMEZ, JR., | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is J&J Sports Productions, Inc.'s ("Plaintiff") motion for default judgment.[1]  After considering the motion, record, and relevant authorities, the Court **GRANTS** the motion to the extent stated below.

## I.      Background

On September 19, 2012, Plaintiff sued Catarino Gamez, Jr., a/k/a Caterino Gamez, Jr., individually and d/b/a House of Wings ("Defendant").[2]  In the complaint, Plaintiff accused Defendant of violating 47 U.S.C. §§ 553 and 605 by showing "Number One": The Floyd Mayweather, Jr. v. Juan Manuel Marquez Championship Fight Program, including undercard or preliminary bouts (collectively, "the Event"), at the House of Wings without Plaintiff's authorization.[3]

Plaintiff filed a request for entry of default and the motion for default judgment on December 4, 2012.[4]  The Clerk of Court entered default in this case on December 7, 2012.[5]  Over

---

[1] Dkt. No. 10.
[2] Dkt. No. 2.
[3] Id.
[4] Dkt. Nos. 9 & 10.
[5] Dkt. No. 14.

four months have passed since default was entered, and Defendant has failed to respond to the motion for default judgment.

## II.    Analysis

The Fifth Circuit has explained the default-process stages of Federal Rule of Civil Procedure 55 as sequentially proceeding from the event of default, to the entry of default, and ultimately to the default judgment now requested by Plaintiff.[6]  Generally, "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment . . . ."[7]  "Unlike questions of actual damage, which must be proved in a default situation, conduct on which liability is based may be taken as true as a consequence of the default."[8]  To be clear, "[a default judgment] does not establish the amount of damages."[9]  Although the Fifth Circuit often "require[s] [a] district court to hold an evidentiary hearing on damages, even in the case of default judgments[,]"[10] a district court may instead rely on "detailed affidavits establishing the necessary facts."[11]

## A.    Liability

Plaintiff sued Defendant for violations of 47 U.S.C. §§ 553 and 605.  Section 553 states in part: "(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."[12]  Similarly, section 605 states in part:

---

[6] *See* New York Life Ins. Co. v. Brown, 84 F.3d 137, 141 (5th Cir. 1996) (citation omitted).
[7] Jackson v. FIE Corp., 302 F.3d 515, 524 (5th Cir.2002) (quoting Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.1975)).
[8] Frame v. S-H, Inc., 967 F.2d 194, 205 (5th Cir. 1992) (citations omitted).
[9] United States for Use of M–CO Const. v. Shipco General, 814 F.2d 1011, 1014 (5th Cir.1987).
[10] *Frame*, 967 F.2d at 204 (citations omitted).
[11] United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979).
[12] 47 U.S.C. § 553(a).

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed . . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. . . .[13]

Regarding violations of Sections 553 and 605, another court in this district recently observed that "[t]he Communications Act is a strict liability statute . . . . As a strict liability statute, to prove a violation, the plaintiff need only show that the Event was shown in the defendant's establishment without the plaintiff's authorization."[14]

Here, by default, Defendant has admitted the following:

- On September 19, 2009, Defendant was the owner of the House of Wings, a commercial establishment.[15]

- "Plaintiff is the license company exclusively authorized to sub-license the closed circuit telecast" of the Event.[16]

- "The closed-circuit broadcast of the Event was not intended for the use of the general public.  In Texas, the closed-circuit broadcast of the Event

---

[13] 47 U.S.C. § 605(a).
[14] Joe Hand Promotions, Inc. v. Lee, Civ. No. H-11-2904, 2012 WL 1909348, at *3 (S.D. Tex. May 24, 2012) (citations omitted).
[15] Dkt. No. 2 at ¶ 2.
[16] Dkt. No. 2 at ¶ 5.

could only be exhibited in a commercial establishment, if the establishment was contractually authorized to do so by Plaintiff."[17]

- "The transmission of the event originated via satellite and was electronically coded or 'scrambled.' In order for the signal to be received and telecast clearly, it had to be decoded with electronic decoding equipment."[18]

- "The establishments which contracted with Plaintiff to broadcast the Event were provided with the electronic decoding capability and/or satellite coordinates necessary to receive the signal of the Event."[19]

- Defendant did not contractually obtain the rights to display the event.[20]

- "Defendant was not authorized to intercept, receive or transmit the communication of the Event or to assist in such actions in any form or at any time."[21]

- "On September 19, 2009, Defendant willfully intercepted and/or received the interstate communication of the Event. In the alternative, Defendant assisted in the receipt of the interstate communication of the Event. Defendant then transmitted, divulged and published said communication, or assisted in transmitting, divulging and publishing said communication, to patrons within" the House of Wings establishment.[22]

These admissions establish that Defendant showed the Event in his establishment without Plaintiff's authorization and, therefore, Defendant violated both 47 U.S.C. §§ 553 and 605.

**B.    Damages, Fees and Costs**

Now that Defendant's liability has been established, the Court will determine the damages, fees and costs to which Plaintiff is entitled. In *Entertainment by J & J, Inc. v. Al-Waha Enterprises, Inc.*,[23] Judge Crone[24] explained that "[a] majority of courts that have dealt with a violation of both [Sections 553 and 605] award damages only under Section 605 because that

[17] Dkt. No. 2 at ¶ 6.
[18] Dkt. No. 2 at ¶ 8.
[19] Dkt. No. 2 at ¶ 10.
[20] Dkt. No. 2 at ¶ 9.
[21] Dkt. No. 2 at ¶ 15.
[22] Dkt. No. 2 at ¶¶ 2 & 11.
[23] 219 F. Supp. 2d 769 (S.D. Tex. 2002).
[24] The Court notes that Judge Crone's opinion in *Al-Waha Enterprises, Inc.* is an excellent source of information which explains how various courts have handled claims brought under 47 U.S.C. §§ 553 and 605.

provision allows for greater recovery by plaintiffs."[25]   Here, the Court will only calculate damages, fees and costs under Section 605.  The Court notes, however, that it would award an identical amount of damages, fees and costs if it calculated the same under 47 U.S.C. § 553.

Under 47 U.S.C. § 605(e)(3)(C)(i), Plaintiff is allowed to elect whether it will seek *actual* damages or *statutory* damages.  In its motion for default judgment, Plaintiff opted to seek *statutory* damages.  The statute states in relevant part that "the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ."[26] Other courts have found that damages of $50 per-patron to be a reasonable amount of damages under this subsection.[27]   After reviewing those cases and the affidavit which explains the damages Plaintiff has suffered,[28] the Court agrees that $50 per-patron is a reasonable amount of statutory damages.  Furthermore, Plaintiff has produced evidence that there were approximately 100 people in the House of Wings on September 19, 2009, when the event was being displayed.[29]   Therefore, the Court finds that $5,000 is a reasonable amount of damages under § 605(e)(3)(C)(i)(II), and awards the same to Plaintiff.

Additionally, Plaintiff seeks damages under 47 U.S.C. § 605(e)(3)(C)(ii) which states:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.[30]

---

[25] *Al-Waha*, 219 F. Supp. 2d at 775 (collecting cases).
[26] 47 U.S.C. § 605(e)(3)(C)(i)(II).
[27] J & J Sports Productions, Inc. v. Cardenas, Civ. No. SA-11-CV-1043-XR, 2012 WL 4434749, at *2 (W.D. Tex. Sept. 24, 2012) (citing Garden City Boxing Club, Inc., v. Gomez, Civ. No. B–05–249, 2006 WL 1663358, at *3 (S.D.Tex. June 5, 2006)).
[28] Dkt. No. 10-1 at pp. 4-9.
[29] Dkt. No. 10-1 at p. 18.
[30] 47 U.S.C. § 605(e)(3)(C)(ii).

Here, by default, Defendant admitted that "Defendant's actions were committed willfully and with the express purpose and intent to secure a commercial advantage and private financial gain."[31]  Therefore, the Court finds that Defendant's violation of 47 U.S.C. § 605(a) was willful and for commercial advantage or private financial gain.   Furthermore, after considering Plaintiff's evidence regarding the damage it suffers from the unauthorized use of its programming, **the Court finds that additional damages are necessary to send a message that illegal piracy is neither acceptable nor profitable**.[32]  Therefore, the Court finds that additional damages of $10,000 under § 605(e)(3)(C)(ii) are reasonable and awards the same to Plaintiff.

Also, Plaintiff seeks attorneys' fees which are available under 47 U.S.C. § 605(e)(3)(B)(iii) as well as costs of court. In support thereof, David M. Diaz, counsel for Plaintiff, attached an affidavit which indicates that Plaintiff's attorneys "reasonably expended or will expend a minimum of four (4) hours on this litigation through the preparation of Plaintiff's Motion for Default Judgment."[33]  Furthermore, David M. Diaz, states that he believes that a "rate of $250.00 per hour is reasonable for anti-piracy litigation . . . ."[34]  The Court agrees that $250 is a reasonable hourly rate in this case and finds that Plaintiff's attorneys have expended four hours in bringing this case to its current stage.  Therefore, the Court finds that $1,000 in attorneys' fees is reasonable and awards the same to Plaintiff.   Plaintiff also seeks attorneys' fees which are conditioned on future potential events.  The Court approves as reasonable the conditional attorneys' fees in the amounts set forth below.  The Court also awards court costs to Plaintiff.

Plaintiff also seeks an injunction that "enjoins Defendant from ever intercepting or exhibiting an authorized program in violation of the Federal Communications Act."  The Court

---

[31] Dkt. No. 2 at ¶ 12.
[32] *See* J & J Sports Productions, Inc. v. Cardenas, Civ. No. SA-11-CV-1043-XR, 2012 WL 4434749, at *3 (W.D. Tex. Sept. 24, 2012).
[33] Dkt. No. 10-2 at p. 5.
[34] Dkt. No. 10-2 at p. 6.

sees no benefit to issuing a broad injunction that merely requires Defendant to comply with the law.  Therefore, the Court will not enter an injunction.

## III.     Conclusion

The Court finds that Defendant has violated 47 U.S.C. §§ 553 & 605.  Accordingly, the Court orders Defendant to pay Plaintiff the following:

- $5,000 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

- $10,000 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii);

- $1,000 in attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii); and

- costs of court pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

Also, the Court awards to Plaintiff the following attorneys' fees, conditioned on the following circumstances:

- $1,000 in the event Defendant files a motion to vacate, Rule 60 motion, motion for new trial, motion for reconsideration or other post-judgment, pre-appeal motion that does not result in a reversal of the Judgment obtained in this action;

- $10,000 in the event Defendant files an appeal to the Fifth Circuit Court of Appeals that does not result in a reversal of the Judgment obtained in this action;

- $5,000 for making and/or responding to a petition for writ of certiorari to the United States Supreme Court that does not result in a reversal of the Judgment obtained in this action; and

- $10,000 for an appeal to the United States Supreme Court in the event a writ of certiorari is granted and does not result in a reversal of the Judgment obtained in this action.

Accordingly, the Court **GRANTS** default judgment for J&J Sports Productions, Inc. and against Catarino Gamez, Jr., a/k/a Caterino Gamez, Jr., individually and d/b/a House of Wings. Judgment is hereby entered in the amount of $16,000, plus costs of court, with the additional fees awarded as conditioned herein.   Additionally, post-judgment interest shall accrue at the rate of **0.12%**.

IT IS SO ORDERED.

DONE this 26th day of April, 2013, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE